```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
AYDIN KAYA, et al.,                                        :
                                                           :
                                  Plaintiffs,              :
                                                           :        23-CV-1587 (VSB)
             - against -                                   :
                                                           :        OPINION & ORDER
UNITED STATES SMALL BUSINESS                               :
ADMINISTRATION, et al.,                                    :
                                                           :
                                  Defendants.              :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Jeffrey Benjamin
The Linden Law Group, PC
New York, NY
*Counsel for Plaintiffs*

Rebecca Lynn Salk
U.S. Attorney's Office for the Southern District of New York
New York, NY
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Plaintiffs, a horse-drawn carriage tour business and its proprietor, obtained a $40,000 loan under the COVID-19 Economic Injury Disaster Loan program ("EIDL") from Defendant the United States Small Business Administration ("SBA"). Approximately a year after obtaining the loan, the SBA denied Plaintiffs' application for an additional $310,000 in EIDL funds, asserting that it could not verify the existence of an eligible business. In this action, Plaintiffs seek monetary, injunctive, and declaratory relief from Defendants the SBA and its Administrator under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06.

Before me is Defendants' motion to dismiss Plaintiffs' complaint and Plaintiffs' motion for leave to file an amended complaint. Because the congressional appropriation for the COVID-19 EIDL program has expired, and the funds that Congress appropriated for the program have been expended, there is no subject-matter jurisdiction to grant Plaintiffs' requested relief. Alternatively, even if funds were available, Plaintiffs would fail to state a claim under the Administrative Procedure Act because the decision to deny COVID-19 EIDL loans is discretionary and therefore unreviewable. These deficiencies are not cured in Plaintiffs' proposed amended complaint. For these reasons and for the reasons that follow, Defendants' motion to dismiss is GRANTED, and Plaintiffs' motion to amend is DENIED.

I.  **Background**[1]

  A. *Statutory Background*

"The Small Business Act of 1953 created the Small Business Administration," ("SBA"), a federal agency tasked with protecting "the interests of small-business concerns in order to preserve free competitive enterprise." *Small Bus. Admin. v. McClellan*, 364 U.S. 446, 447 (1960) (citing 67 Stat. 232, *as amended*, 15 U.S.C. §§ 631–51.) The SBA is empowered "to make . . . loans . . . as the [SBA] may determine to be necessary or appropriate to any small business concern . . . located in an area affected by a disaster . . . if the [SBA] determines that the [small business] concern . . . has suffered a substantial economic injury as a result of such disaster." 15 U.S.C. § 636(b)(2). As relevant here, such a loan is called an "economic injury disaster loan" ("EIDL"). 13 C.F.R. § 123.300(a).

---

[1] The factual allegations set forth herein are taken from the allegations in Plaintiffs' complaint, (Doc. 1), and proposed amended complaint, (Doc. 24-1). I assume Plaintiffs' allegations to be true for purposes of this motion. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). However, my reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings. Before reciting Plaintiffs' factual allegations, I provide a brief overview of the relevant statutory framework.

2

As a part of the March 2020 Coronavirus Aid, Relief, and Economic Security Act, (the "CARES Act"), Congress authorized the SBA to make EIDL loans to small businesses affected by the pandemic. Pub. L. No. 116-136, § 1110, 134 Stat. 281, 306–08 (2020), *codified at* 15 U.S.C. § 9009. The CARES Act also authorized the SBA to issue up to $10,000 of EIDL loans as "advances" that did not need to be repaid. *Id*. § 1110(e).[2] The SBA distributed funds for EIDL loans on a "'first-come, first-served' basis until the full amount of the congressionally authorized loan commitment has been met." *Pharaohs GC, Inc. v. U.S. Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021) (citing 85 Fed. Reg. 20,813). Over the course of 2020 and 2021, Congress appropriated $45 billion towards COVID-19 EIDL advances and $50 billion towards EIDL loan subsidies, supporting a total of approximately $470 billion in EIDL loans. *See* U.S. Gov't Accountability Off., GAO-21-589, Economic Injury Disaster Loan Program: Additional Actions Needed to Improve Communication with Applicants and Address Fraud Risks 4–5 (2021), https://perma.cc/BC9X-4UWY.[3]

As relevant here, Congress authorized the SBA to approve applicants for EIDL loans "based solely on the credit score of the applicant," or "by using alternative appropriate methods to determine an applicant's ability to repay." 15 U.S.C. § 9009(d)(1). Congress also authorized the SBA to "use information from the Department of the Treasury to confirm that (A) an applicant is eligible to receive [an EIDL] loan, or; (B) the information contained in an

---

[2] Borrowers could use advances for things like "providing paid sick leave to employees unable to work due to the direct effect of the [pandemic]," "maintaining payroll," offsetting "increased costs to obtain materials," "making rent or mortgage payments," and generally "repaying obligations that cannot be met due to revenue losses." *Id*. § 1110(e)(4).

[3] *See also* CARES Act § 1107(e)(6) ($10 billion for advances); Paycheck Protection Program and Health Care Enhancement Act, Pub. L. 116-139, § 101(b), 134 Stat. 620, 620–21 (2020) (additional $10 billion for advances); *id*. tit. II, 134 Stat. at 628 ($50 billion "for the cost of direct loans"); Consolidated Appropriations Act of 2021, Pub. L. 116-260, § 323(d)(1)(D), 134 Stat. 1182, 2021 (2020) (additional $20 billion for advances); American Rescue Plan Act of 2021, Pub. L. 117-2, § 5002(b)(2)(B), 135 Stat. 4, 85 (2021) (additional $5 billion for advances).

3

application for such loan is accurate." *Id*. § 9009(d)(2). The SBA's authority to pay out EIDL loans terminated on December 31, 2021; in other words, the appropriation "lapsed." *Id.* § 9009(e)(8). The SBA "stopped accepting new applications" on January 1, 2022. (Doc. 1 ("Compl") at 6.)[4] The funds appropriated for EIDL loans were exhausted—*i.e.*, ran out—on May 15, 2022. (Doc. 14 ("Olivas Decl.") ¶ 5; *see also* Compl. 6.) After that date, the SBA retained funding set aside for certain loans approved prior to May 16, 2022 but voluntarily cancelled by the recipients thereafter. (Doc. 27 ("2d Olivas Decl.") ¶ 5.) These funds "were designated as unobligated funds." (*Id*. ¶ 6.) The Fiscal Responsibility Act of 2023, signed June 3, 2023, "permanently rescinded any remaining unobligated funds" for EIDL loans. (*Id*. ¶ 7 (citing Fiscal Responsibility Act of 2023, Pub. L. 118-5 §§ 22, 23, 47, 137 Stat. 10, 26, 28 (2023).)

### B. *Factual Background*

Plaintiffs Aydin Kaya and A-K Entrepreneurship, LLC (collectively, "Plaintiffs") operate a "horse-drawn carriage tour business" that was "crippled by the COVID-19 pandemic." (Compl. 7.) "[O]n or around July 9, 2020," Plaintiffs applied for an EIDL loan, attaching relevant "corporate documents including current tax returns." (Doc. 24-1 ("Am. Compl.") ¶ 24.) On approximately four instances between July 2020 through August 2021, Plaintiffs "submitted and re-submitted" additional documentation to the SBA and the Internal Revenue Service ("IRS") in order to "prove the basis for an increase" in the amount of the EIDL loan request to a total of $350,000. (*Id*. ¶ 26.) On August 18, 2021, Plaintiffs received a $40,000 EIDL loan. (*Id*. ¶ 27.) On December 29, 2021, Plaintiffs sent in "the final document for approval" of the additional $310,000. (*Id*. ¶ 28; *see also id*. ¶ 35.)

---

[4] Pincites to Plaintiffs' complaint refer to page numbers, as the paragraph numeration is inconsistent.

SBA notified Plaintiffs on January 3, 2022 that "[n]o additional information is required at this time" for the EIDL loan request. (*Id*. ¶¶ 29, 31.) Nonetheless, Plaintiffs submitted additional documentation to the SBA "in the first quarter of 2022" in an attempt to demonstrate eligibility for the additional loan amount. (*Id*. ¶ 32.) On April 28, 2022, Plaintiffs "received a declination letter from the SBA dated April 27, 2022, which stated that 'The SBA has been unable to verify the existence of an eligible business as reflected in the application.'" (*Id*. ¶ 33.) Because the SBA did not approve the additional $310,000 that Plaintiffs requested before the exhaustion of EIDL funds, Plaintiffs did not receive the balance of the requested EIDL loan. (*Id*. ¶¶ 35–37.) "Due to the negligent or otherwise improper denial of this critical infusion of operating funds, Plaintiffs' business was forced to cease operations." (*Id*. ¶ 38.)

### C. *Procedural History*

Plaintiffs initiated this action on February 27, 2023 by filing a complaint, naming as Defendants the SBA and Isabella Casillas Guzman[5] in her official capacity as the Administrator of the SBA. (*See* Compl.) The complaint asserted two causes of action against Defendants under the APA: (1) that the refusal to grant Plaintiffs an additional loan was an arbitrary and capricious action; and (2) that actions of Defendants were contrary to law and in excess of statutory authority. (Compl. 8–10.) As relief, Plaintiffs sought: (a) a declaration that Defendants' actions were arbitrary and capricious and in violation of the law; (b) preliminary and injunctive relief directing Defendants to approve and fund Plaintiffs' loan increase requests; (c) an award of monetary damages for loss of business; (d) attorneys' fees; and (e) any other relief as the Court may deem proper. (*Id*. 10.)

---

[5] Guzman is automatically substituted for Defendant Kelly Loeffler by operation of Federal Rule of Civil Procedure 25(d).

On June 14, 2023, Defendants moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 11.) The same day, Defendants submitted a supporting memorandum of law, (Doc. 13 ("MTD Mem.")), and two supporting declarations, (Doc. 13 ("Olivas Decl."); Doc. 14 ("Salk Decl.")). On October 31, 2023, Plaintiffs submitted a memorandum of law in opposition to the motion to dismiss. (Doc. 25 ("MTD Opp'n").) The same day, Plaintiffs submitted a motion to amend the complaint, (Doc. 24), a supporting memorandum of law, (Doc. 24-3 ("Amend. Mem.")), and a proposed amended complaint, (Doc. 24-1 ("Am. Compl.")). The proposed amended complaint contains additional factual allegations, but does not assert additional claims for relief. (*See* Am. Compl.) On November 14, 2023, Defendants submitted a memorandum of law in further support of the motion to dismiss and in opposition to the motion to amend, (Doc. 26 ("Reply")), and two supporting declarations, (Doc. 27 ("2d Olivas Decl."); Doc. 28 ("2d Salk Decl.")).

## II.  Legal Standard

### A.  *Rule 12(b)(1)*

"Determining the existence of subject matter jurisdiction is a threshold inquiry[,] and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010); *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (describing subject matter jurisdiction as a "threshold question" (internal quotation marks omitted)). Although a district court resolving a motion to dismiss under Rule 12(b)(1) "must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction," "where jurisdictional facts are placed in dispute, the court has the power

6

and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (cleaned up). "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks omitted).

### B. *Rule 12(b)(6)*

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011) (citation omitted).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

### C. *Leave to Amend*

"Leave to amend is to be freely given when justice requires." *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2013) (citing, *inter alia*, Fed. R. Civ. P. 15(a)(2)). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citing *Foman v. Davis,* 371 U.S. 178, 182 (1962)). The "non-movant bears the burden of showing prejudice, bad faith and futility of the amendment." *Grant v. Citibank (S. Dakota), N.A.*, No. 10-CV-2955, 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010) (citing, *inter alia*, *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993)). Rule 15(a)(2) is a "liberal" and "permissive" standard in accord with the Second Circuit's "strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted).

### III. Discussion

Defendants argue that dismissal is warranted because (1) Plaintiffs lack standing, (2) Plaintiffs' claims are barred by sovereign immunity, and (3) Plaintiffs fail to state a claim for which relief may be granted. (*See* MTD Mem. 5–12.) Additionally, Plaintiffs request leave to file an amended complaint. For the reasons that follow, the motion to dismiss is GRANTED, and Plaintiffs' motion for leave to file an amended complaint is DENIED.

### A. *Subject-Matter Jurisdiction*

"Article III of the Constitution limits federal courts' authority—that is, our subject matter jurisdiction—to disputes involving 'live cases and controversies.'" *Cnty. of Suffolk v. Sebelius*, 605 F.3d 135, 140 (2d Cir. 2010) (quoting *United States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). In order for a "case" or "controversy" to exist—in other words, in order to have "Article III standing"—a plaintiff must show "(i) that he suffered an injury . . . ; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 422–23 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff "bear[s] the burden" of making these showings, which must be established "for each claim . . . and for each form of relief that" is sought. *Id*. at 430–31. Relatedly, federal courts lack subject-matter jurisdiction when a case is "moot[]"—when it is no longer a "live" Article III case or controversy. *Cnty. of Suffolk*, 605 F.3d at 140. "[U]nder the 'general rule' of mootness, courts' subject matter jurisdiction ceases when 'an event occurs during the course of the proceedings . . . that makes it impossible for the court to grant any effectual relief whatever to a prevailing party.'" *Id*. (quoting *Quattrone*, 402 F.3d at 308 (cleaned up)).

Defendants argue that subject-matter jurisdiction is lacking because the appropriation for COVID-19 EIDL loans has lapsed and the money that had been appropriated for such loans is exhausted. (*See* MTD Mem. 5–6.) I agree that the lapse and exhaustion of the EIDL appropriations mean that I lack subject-matter jurisdiction to award Plaintiffs any of the relief they seek. In *County of Suffolk v. Sebelius*, the Second Circuit considered a federal court's subject-matter jurisdiction to order an agency to disburse funds from a "lapsed" and "exhausted" appropriation in the context of an action under the APA. 605 F.3d at 141. The Court of Appeals

9

held that when an appropriation has lapsed and its funds are exhausted, "'federal courts are without authority to provide monetary relief' because [(1)] the Appropriations Clause prevents additional funds from being paid out of the Treasury" and [(2)] "awarding 'funds available from sources other than the [subject] appropriation' would contravene the 'fundamental requirement'" under the APA "'that a plaintiff seek relief other than monetary damages.'" *Id*. at 142 (quoting *City of Houston v. Dep't of Hous. & Urban Dev.*, 24 F.3d 1421, 1428 (D.C. Cir. 1994) (cleaned up)); *see also infra* § III.B (discussing the APA's limited waiver of sovereign immunity).

Here, Plaintiffs seek "an award of damages for loss of business" and "injunctive relief directing Defendants . . . to approve and fund the EIDL funding increase request." As to the first request, it is well established that "monetary damages are not available under the APA, which limits relief to 'other than money damages.'" *De La Mota v. U.S. Dep't of Educ.*, No. 02-CV-4276, 2003 WL 21919774, at *4 (S.D.N.Y. Aug. 12, 2003) (quoting 5 U.S.C. § 702); *accord McGrath v. Mukasey*, No. 07-CV-11058, 2008 WL 1781243, at *4 n.55 (S.D.N.Y. Apr. 18, 2008); *see also Cnty. of Suffolk*, 605 F.3d at 142. The request for money damages is therefore outside the scope of my subject-matter jurisdiction. *See De La Mota*, 2003 WL 21919774, at *4 ("[T]his Court lacks subject matter jurisdiction over plaintiffs' claim for monetary relief.").

Plaintiffs' request for an injunction ordering the disbursement of loan funding is cognizable under the APA, because the statute's "bar against monetary damages does not adhere to claims for specific relief, even those requiring a purely monetary judgment." *Sanon v. Dep't of Highter Educ.*, No. 06-CV-4928, 2010 WL 1049264, at *4 (E.D.N.Y. Mar. 18, 2010), *aff'd*, 453 F. App'x 28 (2d Cir. 2011) (citing *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)). This is because federal courts construe injunctions requiring the government to disburse funds as "specific relief (they undo the . . . refusal to [disburse appropriated funds]) rather than for money

damages (they do not provide relief that substitutes for that which ought to have been done)." *Bowen*, 487 U.S. at 910; *see also, e.g.*, *Rodriguez v. Carson*, 401 F. Supp. 3d 465, 471 (S.D.N.Y. 2019) (enjoining disbursements of funds under the APA). However, Plaintiffs allege in the complaint that "the program ran out of funds" in May 2022. (Compl. 8.) Plaintiffs' complaint is self-defeating in this regard; since there is no COVID-19 EIDL money left, "the Appropriations Clause prevents additional funds from being paid out of the Treasury" for the requested EIDL loan increase. *See Cnty. of Suffolk*, 605 F.3d at 142 (quoting *City of Houston*, 24 F.3d at 1428). Indeed, numerous district courts have relied on *County of Suffolk* to reach the same result in cases challenging PPP or EIDL loan denials. *See, e.g.*, *March v. Small Bus. Admin.*, No. 4:22-CV-543, 2023 WL 355906, at *2–3 (E.D. Mo. Jan. 20, 2023), *reconsideration denied*, 2023 WL 2327675 (E.D. Mo. Mar. 2, 2023), *aff'd*, No. 23-1501, 2023 WL 6474463 (8th Cir. Oct. 5, 2023); *Dini v. Guzman*, No. 22-CV-511, 2023 WL 3790813, *3–5 (D.N.M. June 2, 2023). Plaintiffs argue that *Dini* is distinguishable because the SBA had not determined that the plaintiff there was eligible for an EIDL loan. (*See* MTD Opp'n 8). However, the relevant fact in *Dini* and here is that "the appropriated funds were exhausted," and the program was "closed." 2023 WL 6474463, at *1. Further, Plaintiffs cite no authority—and I have not found any case—permitting an applicant for an EIDL loan or loan increase to seek funding from the SBA following the lapse of EIDL funding and expiration of the program.

Plaintiffs, citing *Rodriguez v. Carson*, 401 F. Supp. 3d 465 (S.D.N.Y. 2019), additionally argue there is no "bar [to] relief when a claim is directed towards appropriated funds that have been contractually obligated to third parties but not yet disbursed." (MTD Opp'n 6–7.) In *Rodriguez*, Judge Jesse M. Furman held that *County of Suffolk* does not apply to "appropriated funds that [an] agency has *obligated*, but not yet disbursed." 401 F. Supp. 3d at 468. *Rodriguez*

11

is plainly distinguishable—there "the funds" at issue "ha[d] not been expended." *Id*. at 469. For *Rodriguez* to be applicable here, Plaintiffs would need to identify a source of funding for their requested loans. *See id*. at 468–69. To do so, Plaintiffs assert—contrary to their allegations in the complaint that EIDL funding has lapsed, (*see* Compl. 8)—that it is premature to conclusively determine that funding has lapsed and is exhausted because "the only 'record' before the Court is the SBA's self-serving statements" to that effect, (MTD Opp'n 6). This ignores that "where jurisdictional facts are placed in dispute . . . the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243 (cleaned up). Plaintiffs aver that funds from cancelled EIDL loans returned to the SBA might provide the funding source for the relief they seek. (*See* MTD Opp'n 8 (citing Olivas Decl. ¶ 6).) However, "'mere speculation'" that these funds still exist and could cover the amount of relief Plaintiffs seek "cannot provide a substitute for the averment of jurisdictional facts." *Yellow Page Sols., Inc. v. Bell Atl. Yellow Pages Co.*, No. 00-CV-5663, 2001 WL 1468168, at *9 (S.D.N.Y. Nov. 19, 2001) (quoting *Singer v. Bell,* 585 F. Supp. 300, 303 (S.D.N.Y. 1984)). Moreover, Defendants point out that the Fiscal Responsibility Act of 2023, signed June 3, 2023, "permanently rescinded any remaining unobligated funds" for EIDL loans. (2d Olivas Decl. ¶ 7 (citing Pub. L. 118-5 §§ 22, 23, 47, 137 Stat. at 26, 28).) In other words, any money representing loans that had been cancelled were taken back by the Government. Plaintiffs do not address the fact that any money for EIDL loans that may have remained were "permanently" taken back by the Government. In short, I lack subject-matter jurisdiction to order Defendants to give Plaintiffs EIDL funding for a program that no longer exists and for which funds have been exhausted.

     Although there is no subject-matter jurisdiction, in line with decisions addressing cases in similar postures, I nevertheless address Defendants' alternative argument that Plaintiffs fail to

state a claim. *See Dini*, 2023 WL 3790813, at *5 (addressing failure to state a PPP-loan claim "[a]lternatively, only to the extent Petitioner has standing"); *Reyes v. Small Bus. Admin.*, No. 22-CV-6765, 2024 WL 1195051, at *4 (S.D.N.Y. Mar. 19, 2024) (addressing merits of PPP-loan claim because "assumption of jurisdiction to consider first the merits is not barred where the jurisdictional constraints are imposed by statute, not the Constitution, and where the jurisdictional issues are complex and the substance of the claim is, as here, plainly without merit" (quoting *Ivanishvili* v. *U.S. Dep't of Just.*, 433 F.3d 332, 338 n.2 (2d Cir. 2006)).[6]

### B. *Failure to State a Claim*

If there was subject matter jurisdiction, Plaintiffs' claims would fail on the merits. The APA permits a federal court to "set aside" an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, "[t]he APA does not permit a review of agency actions which are 'committed to agency discretion by law.'" *Hyndman v. Small Bus. Admin.*, No. 22-CV-4973, 2024 WL 233463, at *4 (S.D.N.Y. Jan. 22, 2024) (quoting 5 U.S.C. § 701(a)(2) and citing *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 23 (2018)). This "exception" to the general "presumption favoring judicial review of administrative action" applies in "those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser*, 586 U.S. at 23 (internal quotation marks omitted).

The SBA's actions in denying Plaintiffs' requested EIDL loan increase were discretionary and therefore unreviewable. "Under the Small Business Act, the SBA makes loans as it '*may*

---

[6] For similar reasons, I decline to address Defendants' arguments regarding sovereign immunity. *See Vinegar Factory, Inc. v. Small Bus. Admin.*, No. 23-CV-4967, 2024 WL 1116889, at *1 (S.D.N.Y. Mar. 13, 2024) ("Although subject-matter jurisdiction [and potential waiver of sovereign immunity] is 'usually' a 'threshold issue that must be decided before proceeding to the merits of a given case,' the Second Circuit [has] held . . . that 'the question of the SBA's sovereign immunity is not a threshold question a court must decide before holding that a claim fails on the merits.'" (quoting *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 416 (2d Cir. 2022)).

13

determine to be necessary or appropriate.'" *Hyndman*, 2024 WL 233463, at *4 (quoting 15 U.S.C. § 636(b)(2)) (emphasis in original).  Similarly, 15 USC § 9009(d) provides that the SBA Administrator "may" approve an EIDL loan request based on the applicant's credit score or "alternative appropriate methods" and using information from the Department of the Treasury to confirm an applicant's eligibility.  The "word 'may'" in these statutes "clearly connotes discretion.  *Hyndman*, 2024 WL 233463, at *4 (quoting *Biden v. Texas*, 597 U.S. 785, 802 (2022)).  Moreover, the SBA's decision to award an EIDL loan is an "allocation of funds from a lump-sum appropriation," the type of "agency decision[] that courts have traditionally regarded as unreviewable." *Weyerhauser*, 586 U.S. at 23 (citing *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)).  Given the discretion expressed in the text of the relevant statutes and the lump-sum-appropriation structure of the EIDL loan program, I conclude that Defendants' decisions regarding Plaintiffs' EIDL application were committed to agency discretion by law and therefore unreviewable.  *Accord Hyndman*, 2024 WL 233463, at *5 (collecting cases); *Reyes*, 2024 WL 1195051, at *6 (same).

      Considering Plaintiffs' specific challenges to Defendants' denial reinforces my conclusion.  As noted above, Plaintiffs received an initial $40,000 EIDL loan in August 2021, but did not receive the additional $310,000 requested because Defendants "ha[d] been unable to verify the existence of an eligible business as reflected in [Plaintiffs'] application." (Am. Compl. ¶¶ 27, 33.)  Plaintiffs argue this action violated the APA because the Defendants' denial was "based upon false and non-existent discrepancies regarding the inability to verify the existence of a legitimate business despite previously approving the same business for funding by the SBA." (Am. Compl. ¶ 41(b).)  However, the SBA has the discretion to use Treasury information to verify that "the information contained in an application for [an EIDL] loan is accurate" and that

14

the applicant is eligible for a loan. 15 U.S.C. § 9009(d)(2). Denying an application based on "inconsistencies in [the applicant's] documentation" is therefore "consistent with the plain text of the CARES Act." *Reyes*, 2024 WL 1195051, at *5 (citing 15 U.S.C. § 9009(d)(2)). Plaintiffs cite no authority to support their contention that the SBA's prior approval of an EIDL loan for $40,000 somehow estopped the SBA from subsequently determining that Plaintiffs were ineligible for an additional $310,000 EIDL loan. Indeed, such an interpretation of the law would be inconsistent with the discretion that the relevant statues afford the SBA in approving EIDL loans.

### C. *Leave to Amend*

Defendants have met their burden of showing that granting Plaintiffs leave to amend would be futile. *See Block*, 988 F.2d at 350. Plaintiffs' additional allegations do not cure the two fundamental issues with the case: (1) that funding for the COVID-19 EIDL program has lapsed and there are no EIDL funds Defendants could disburse to Plaintiffs, and (2) that the SBA's decision to deny Plaintiffs' loan request is discretionary and therefore unreviewable. Leave to amend is therefore DENIED.

### IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' complaint is GRANTED. Plaintiffs' motion for leave to file an amended complaint is DENIED.

The Clerk of Court is respectfully directed to terminate the pending motions at Docs. 11 and 24 and to close the case.

SO ORDERED.

Dated: April 8, 2025
      New York, New York

                                            Vernon S. Broderick
                                            United States District Judge